IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN,<br><br>    Plaintiff pro se,<br><br>    v.<br><br>CENLAR FSB *doing business as* Central Loan Administration and Reporting (Cenlar), and Carrington Mortgage Services, LLC,<br><br>    Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-CV-1410-MLB-WEJ |

## ORDER AND
## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

This matter is before the Court on defendant Cenlar FSB's ("Cenlar") Motion to Dismiss [21] and plaintiff pro se Ricky R. Franklin's Motion for Leave to File Second Amended Complaint [25]. For the reasons set forth below, the undersigned **GRANTS** plaintiff's Motion to Amend and **DIRECTS** the Clerk to docket the Second Amended Complaint [25]. Furthermore, the undersigned **RECOMMENDS** that Cenlar's Motion be **GRANTED IN PART** and that Counts I (in part) and III be **DISMISSED**.

## I. PROCEDURAL BACKGROUND

On March 30, 2020, plaintiff filed the initial Complaint [1], which he amended as of right on May 26, via the Amended Complaint [13]. Plaintiff alleges that defendants Cenlar and Carrington Mortgage Services, LLC ("Carrington") violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., that Cenlar violated the Telephone Consumer Protection Act, 47 U.S.C. 227 et seq., that both defendants violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and that Carrington violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641 et seq.

On July 6, 2020, Cenlar filed the instant Motion to Dismiss, arguing that plaintiff's claims against it fail as matter of law. On July 14, plaintiff filed a Motion for Leave to File Second Amended Complaint in an effort to address the alleged deficiencies raised by Cenlar.[1] (See generally Pl.'s Mot. Am. & Ex. A (Second Am. Compl.).) Cenlar filed a response [27] opposing plaintiff's request and plaintiff filed a reply [31].

---

[1] The Second Amended Complaint does not allege that Carrington violated the FCRA, but otherwise asserts the same claims against each defendant. (Compare Am. Compl., with Second Am. Compl.)

At this stage in the litigation, Federal Rule of Civil Procedure 15 governs motions to amend the pleadings and instructs the Court to "freely give leave when justice so requires." Fed. R. Civ. 15(a)(2). Accordingly, the Court **GRANTS** plaintiff's Motion [25] and **DIRECTS** the Clerk to docket the Second Amended Complaint [25]. Furthermore, because plaintiff's newest iteration of his claims alleges the same counts against Cenlar, its Motion to Dismiss remains applicable. Moreover, the parties' subsequent briefs have thoroughly explained their positions on the validity of plaintiff's claims against Cenlar. Therefore, to prevent further delay and expense to the parties, the undersigned addresses Cenlar's Motion to Dismiss.

## II.  THE SECOND AMENDED COMPLAINT

Plaintiff alleges that defendants "are debt collectors within the meaning of the FDCPA," that "debt collection is part of [their] ordinary business practice," and that they "regularly collect[] debts 'owed or due asserted to be owed or due another.'" (Second Am. Compl. ¶ 10.) Plaintiff also alleges that defendants acquired the debt while in default. (Id.)

On April 3, 2019, plaintiff received a letter stating that Cenlar had acquired the defaulted loan and that plaintiff should make payments to Cenlar. (Second. Am. Compl. ¶ 11.) The letter also stated: "Under the [FDCPA], as well as

3

various state-specific acts, [Cenlar] is considered a debt collector." (Id.) On April 22, plaintiff requested a validation of the debt and disputed the debt via letter to Cenlar. (Id. ¶ 12.) Plaintiff sent Cenlar two additional letters, requesting "to inspect the original note or any agreements that he had a duty to pay [Cenlar]" and stating that "all communications **must be done** by US mail only." (Id.)

On April 25, 2019, Cenlar responded by letter, stating that it needed more time to look into the matter. (Second. Am. Compl. ¶ 13.) That letter also included the following statement: "**THIS COMMINICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" (Id.) In a separate April 25 letter, Cenlar stated that Citimortgage was the owner/assignee of the debt and included an address. (Id.) In a May 14 letter, Cenlar indicated that "another party originated the loan and that the loan is registered in MERS" but was "not recorded or assigned in the county of records however it is reflected in MERS." (Id. ¶ 14.)

On May 31, 2019, plaintiff sent another letter to Cenlar stating that the validation of the debt was not sufficient, disputing the debt, and demanding that it stop collecting the debt. (Second Am. Compl. ¶ 15.) However, plaintiff received his credit report from the three major credit reporting agencies (the "CRAs") and

it reflected negative information concerning the loan that Cenlar allegedly failed to verify. (Id. ¶ 30.) On June 5, plaintiff disputed the inaccurate information reported by Cenlar with all three CRAs. (Id. ¶ 33.)

In October 2019, plaintiff received an email from Cenlar stating that it was not able to reach him by telephone and asking that he call Cenlar. (Second Am. Compl. ¶ 16.) On October 24, plaintiff called Cenlar and a representative stated that Cenlar took over the loan when it was delinquent and in default. (Id. ¶ 17.) The call ended abruptly, so plaintiff called back and told the representative not to add his cellphone number to Cenlar's file. (Id.)

On November 15, 2019, plaintiff called Cenlar and told a representative that it was okay to call him manually, but that he did not want to receive automated/computer calls to his cellphone. (Second Am. Compl. ¶ 18.) On December 3, plaintiff's cellphone (678-650-3733) received a call from 800-242-7178; plaintiff answered the call and was greeted by an automated voice that stated: "Please call [Cenlar] at 800-242-7178, again that number is 800-242-7178. Thank you[.]" (Id. ¶ 19.) On December 4, plaintiff received a similar call from the same number and heard the same automated message. (Id. ¶ 20.)

On December 5, 2019 and March 7, 2020, plaintiff mailed Cenlar letters stating that he did not consent to receive automated calls and asking Cenlar to

5

stop calling his cellphone ending in -3733. (Second Am. Compl. ¶¶ 21-22.) Nevertheless, plaintiff continued to receive the same automated message to his cellphone ending in -3733 more than sixty-two times. (Id. ¶¶ 23 (listing exact dates and times of the alleged calls from October 24, 2019 through April 1, 2020); see also id. ¶ 25.) Plaintiff alleges that Cenlar continued to harass him with automated calls that caused him significant anxiety and inconvenience. (Id. ¶ 24.)

On April 1, 2020, plaintiff called Cenlar and requested a forbearance. (Second Am. Compl. ¶ 27.) On April 13, plaintiff received an email from Cenlar confirming his enrollment in the forbearance program. (Id. ¶ 28.) On April 21, plaintiff received a letter from Cenlar stating that the debt was sold to Carrington. (Id. ¶ 29.)

The Second Amended Complaint alleges FDCPA, TCPA, and FCRA claims against Cenlar in Counts I through III, respectively. (Second Am. Compl. ¶¶ 40-56.) Count I alleges that Cenlar is a debt collector as defined by the FDCPA, that "debt collection is part of its ordinary business practice," that it "regularly collects debts on behalf of others," and that it "collected this debt as a third party agency while it was in default." (Id. ¶ 42.) Plaintiff alleges that Cenlar violated § 1692c(c) by continuing to send harassing letters after receiving

6

his cease and desist letter, and that Cenlar knew or should have known that its letters and phone calls were inconvenient to plaintiff. (Id. ¶ 44.) Plaintiff alleges that Cenlar violated § 1692e(10) by using false and deceptive means to collect or attempt to collect the debt or to obtain information concerning him. (Id. ¶ 45.) Likewise, plaintiff contends that Cenlar violated § 1692e(8) by communicating or threatening to communicate false credit information, including failure to communicate that the debt is disputed. (Id. ¶ 46.) Plaintiff contends that Cenlar violated § 1692f by using an unfair or unconscionable means to collect or attempt to collect the debt and violated § 1692g by failing to validate the debt. (Id. ¶¶ 47-48.) Finally, plaintiff alleges that Cenlar violated § 1692e(11) by failing to disclose in its initial written communication and subsequent communications that it was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose, and violated § 1692f(6) by threatening to unlawfully repossess or disable his property. (Id. ¶¶ 49-50.)

Count II alleges that Cenlar violated § 227(b)(1)(A)(iii) of the TCPA by contacting plaintiff's cellphone via artificial pre-recorded voice messages more than sixty-two times after he revoked consent to do so. (Second Am. Compl. ¶ 52.) Count III alleges that Cenlar willfully failed to comply with § 1681s-2(b) of the FCRA. (Id. ¶ 54.) Plaintiff alleges that Cenlar's omissions caused him to

7

suffer damages, including denial of credit for a car loan, lost opportunity to receive credit, damage to his reputation, worry, depression, loss of enjoyment of life, extreme stress, frustration, embarrassment, and humiliation. (Id. ¶ 55.) Finally, in his Prayer for Relief, plaintiff seeks statutory, compensatory, and punitive damages. (Id. at 15.)

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations in the light most favorable to the plaintiff. Rivell v. Private Health Care Sys., Inc., 520 F.3d 1308, 1309 (11th Cir. 2008) (per curiam). Although a court is required to accept well-pleaded facts as true and make reasonable inferences in favor of the plaintiff, it is not required to accept the plaintiff's legal conclusions or unwarranted deductions of fact. Chandler v. Sec'y of Fla. Dep't of Transp., 695 F.3d 1194, 1199 (11th Cir. 2012) (per curiam) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005) (per curiam).

8

A court may dismiss a complaint if it does not plead "enough facts to state a claim to relief that is plausible on its face." Chandler, 695 F.3d at 1199 (internal quotation marks and citation omitted). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), the Supreme Court stated that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Although factual allegations in a complaint need not be detailed, those allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (citations and footnote omitted).

Moreover, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The mere possibility that the defendant might have acted unlawfully is insufficient to allow a claim to survive a motion to dismiss. Id. Instead, the well-pleaded allegations of the complaint must move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570. However, the factual allegations in a complaint can be sufficient to survive a motion to dismiss even though recovery may be remote or unlikely. Id. at 555-56. As long as the facts alleged create a

9

reasonable expectation that discovery will reveal evidence of the necessary elements, the plaintiff's suit should continue. Id. at 556.

## IV. DISCUSSION

In its Motion to Dismiss, Cenlar argues that plaintiff failed to state a claim under the FDCPA (Count I), the TCPA (Count II), and the FCRA (Count III). (See Def.'s Mem. [21-1].) However, in opposing plaintiff's Motion to Amend, Cenlar only contends that plaintiff's FDCPA and FCRA are insufficient. (See Def.'s Mem. Opp'n [27].) Indeed, the Second Amended Complaint specifically addresses Cenlar's concerns regarding plaintiff's TCPA claim by alleging the cellphone number to which the calls were made and the specific dates of the calls. (Compare Def.'s Mem. 6-8, with Second. Am. Compl. ¶¶ 19-25.) Therefore, the undersigned **REPORTS** that the Second Amended Complaint states a TCPA claim against Cenlar and **RECOMMENDS** that Cenlar's Motion to Dismiss be denied as to Count II. The undersigned addresses Cenlar's remaining arguments regarding Counts I (in part) and III.

### A. FDCPA Claim

By enacting the FDCPA, Congress sought "'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

10

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th Cir. 1997) (per curiam) (quoting 15 U.S.C. § 1692(e)). To establish a claim under the FDCPA, a plaintiff must demonstrate that: (1) he was the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA ; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir. 2010) (per curiam).

Cenlar argues that plaintiff's FDCPA claim fails for the following two reasons: (1) because he did not allege any facts to support his conclusory allegations that it is a debt collector under the FDCPA, and (2) because he failed to allege that it engaged in any act or omission prohibited by the Act. (Def.'s Mem. 5-6; Def.'s Mem. Opp'n 5-10.) Cenlar's first point is well taken and dismissal of plaintiff's FDCPA claim is warranted on that deficiency alone. For the reasons explained below, despite proffering yet a third pleading, plaintiff has failed to allege any facts in support of his conclusory allegation that Cenlar is a debt collector.

First, plaintiff's conclusory recitation of the FDCPA's definition of debt collector is unavailing. This Court repeatedly has found that "[r]eciting the

11

statutory definition without offering any facts in support is insufficient to plausibly allege that [d]efendants meet the definition of debt collectors, such that the FDCPA applies to them." Cyrus v. Wells Fargo Bank, N.A., No. 1:12-CV-1156-TWT-LTW, 2013 WL 869398, at *4 (N.D. Ga. Feb. 7, 2013), R. & R. adopted, 2013 WL 870075 (N.D. Ga. Mar. 7, 2013); see also Mills v. JP Morgan Chase Bank, No. 1:11-CV-3709-JEC-LTW, 2012 WL 4086508, at *9 (N.D. Ga. July 23, 2012) (the complaint was subject to dismissal because, among other things, "[p]laintiffs fail to allege any specific facts indicating that [the defendant] regularly attempts to collect debts, that the principal purpose of its business is the collection of debts, or that the principal purpose of its business is the enforcement of security interests"), R. & R. adopted, 2012 WL 4075634 (N.D. Ga. Aug. 14, 2012); Correa v. BAC Home Loans Servicing LP, No. 6-11-CV-1197-Orl-22DAB, 2012 WL 1176701, at *12 (M.D. Fla. Apr. 9, 2012) (because the plaintiff cited only the general definition of a "debt collector" and stated that defendants are debt collectors in a conclusory manner, the plaintiff failed to allege facts sufficient to state a claim for relief under the FDCPA).

Likewise, plaintiff's contention that Cenlar acquired the debt in default (Second Am. Compl. ¶ 11) is equally insufficient to plausibly state that it is a debt collector under the Act. The Eleventh Circuit specifically rejected the assertion

that doing so necessarily makes a creditor a debt collector. See Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1316 (11th Cir. 2015). As the Circuit explained in Davidson, "a person who does not otherwise meet the requirements of § 1692a(6) is not a 'debt collector' under the FDCPA, even where the consumer's debt was in default at the time the person acquired it." Id.; see also Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1724 (2017) ("For while the statute surely excludes from the debt collector definition certain persons who acquire a debt before default, it doesn't necessarily follow that the definition must include anyone who regularly collects debts acquired after default. After all and again, under the definition at issue before [the Court] you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector.").

Finally, the standard dunning language in the letters received by plaintiff cannot meet his burden of establishing that the FDCPA applies to Cenlar. Indeed, even when an entity refers to itself as a debt collector and references the FDCPA in its correspondence, the Circuit has rejected the notion that such references establish that the entity is a debt collector: "[a]n entity cannot transform itself into a debt collector within the meaning of the FDCPA simply by noting in a

13

letter that it may be considered one under the Act." Fenello v. Bank of Am., NA, 577 F. App'x 899, 902 (11th Cir. 2014) (per curiam).

Thus, plaintiff has failed to allege any facts establishing that a principal purpose of Cenlar's business is debt collection, such that it is a debt collector within the purview of the FDCPA. Accordingly, because plaintiff has failed to state a plausible claim for relief against Cenlar under the FDCPA, the undersigned **RECOMMENDS** that Count I be **DISMISSED IN PART** as to it.[2]

### B. FCRA Claim

The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The FCRA is intended "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." Equifax v. Fed. Trade Comm'n, 678 F.2d 1047, 1048 (11th Cir. 1982).

---

[2] Although plaintiff's FDCPA claim against Carrington suffers from the same deficit of facts plausibly alleging it is a debt collector, the undersigned makes no recommendation regarding that claim because Carrington did not join the instant Motion to Dismiss.

The FCRA governs claims by consumers against a furnisher of information based on allegations that the furnisher submitted incorrect information regarding the consumer to CRAs. See generally 15 U.S.C. §§ 1681a(c) & (f), 1681s-2(a). The FCRA imposes two separate duties on furnishers. The first duty is imposed by § 1681s-2(a), which requires furnishers to submit accurate information to CRAs. However, the FCRA does not provide a private right of action to redress an alleged violation of that subsection. See Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008) (per curiam).

The second duty is imposed by § 1681s-2(b), cited by plaintiff in his FDCPA claim against Cenlar set forth in Count III. That subsection requires furnishers of information to investigate and respond promptly to notices of customer disputes. Specifically, after receiving notice of a dispute from a CRA about inaccurate information, a furnisher of information is required to: (1) conduct an investigation with respect to the disputed information; (2) review all of the relevant information provided in the notice from the CRA; and (3) report the results of its investigation to the CRA. If the investigation reveals incomplete or inaccurate information, the furnisher must (1) report those findings to the CRAs to which it provided the incomplete or inaccurate information, and (2) modify, delete, or permanently block the reporting of any information disputed by

a consumer that it finds to be inaccurate or incomplete or that cannot be verified after reinvestigation. See 15 U.S.C. § 1681s-2(b)(1).

The Second Amended Complaint alleges that plaintiff disputed inaccurate credit information with the CRAs (Second Am. Compl. ¶ 33); however, plaintiff failed to allege that any CRA contacted Cenlar regarding his dispute. Without a plausible allegation that Cenlar received notice of plaintiff's dispute from a CRA, the Second Amended Complaint fails to state a viable FCRA claim. See Green, 288 F. App'x at 642 ("The FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a [CRA].").

Moreover, even assuming Cenlar received notice of plaintiff's dispute from the CRAs, Count III still fails because the Second Amended Complaint does not allege facts showing that, after receiving such notice, Cenlar failed to comply with its statutory duties. See Horton v. HSBC Bank, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *6 (N.D. Ga. June 5, 2013) ("To survive a motion to dismiss on a 15 U.S.C. § 1681s-2(b) claim, the plaintiff must allege that the defendant received the proper notice from the [CRA] pursuant to 15 U.S.C. § 1681i(a)(2) and that the defendant failed to uphold its duties pursuant 15 U.S.C. § 1681s-2(b).").

16

Plaintiff makes a single conclusory statement that Cenlar "willfully failed to comply with the requirements imposed under the FCRA." (Second Am. Compl. ¶ 54.) But that is not enough. In his third pleading, plaintiff again failed to allege any facts establishing that Cenlar did not conduct the requisite investigation or fulfill its other duties under the FCRA. Cenlar cannot defend itself against a claim that it failed to comply with § 1681s-2(b) when plaintiff has not stated how it breached those duties. Accord Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009) ("We conclude from the record that Peart's complaint fails to state a claim under the FCRA because it does not allege . . . that Wells Fargo failed to conduct an investigation into Peart's credit history after being notified of a dispute by a [CRA.]"). Accordingly, because plaintiff has failed to state a plausible claim for relief against Cenlar under the FCRA, the undersigned **RECOMMENDS** that Count III be **DISMISSED**.

## V.  CONCLUSION

For the reasons set forth above, the Court **GRANTS** plaintiff's Motion to Amend [25] and **DIRECTS** the Clerk to docket the Second Amended Complaint [25]. Furthermore, the undersigned **RECOMMENDS** that defendant Cenlar's

17

Motion to Dismiss [21] be **GRANTED IN PART** and plaintiff's FDCPA claim (Count I, in part)[3] and FCRA claim (Count III) be **DISMISSED**.  Given that that plaintiff has proffered three pleadings and has yet to allege a viable FDCPA or FCRA claim against Cenlar, the undersigned **REPORTS** that further amendment appears futile.[4]  See Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001) (per curiam) (court need not grant leave to amend where amendment would be futile).

**SO ORDERED AND RECOMMENDED**, this 26th day of August, 2020.

_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant Carrington did not join in the Motion to Dismiss; therefore, plaintiff's FDCPA claim against it set forth in Count I remains pending.

[4] If the above recommendation is accepted, only plaintiff's TCPA claim set forth in Count II would procced against defendant Cenlar.