## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN,<br><br>      Plaintiff,<br><br>v.<br><br>CENLAR FSB d/b/a CENTRAL LOAN ADMINISTRATION AND REPORTING (CENLAR) and CARRINGTON MORTGAGE SERVICES, LLC,<br><br>      Defendants. | Civil Action No.<br>1:20-cv-01410-VMC |

## ORDER

This matter is before the Court on the Final Report & Recommendation ("R&R") of United States Magistrate Judge Walter E. Johnson, which recommends that Defendant Cenlar FSB's ("Cenlar") Motion for Summary Judgment ("MSJ," Doc. 75) as to Plaintiff Ricky R. Franklin's remaining TCPA claim be granted in part as to calls using an artificial or prerecorded voice placed before Cenlar received Mr. Franklin's letter dated December 5, 2019 and denied in part as to later alleged calls. Cenlar filed an Objection to the R&R on April 28, 2022 ("Objection," Doc. 93). Mr. Franklin filed a Response to the Objection on May 11, 2022 ("Response," Doc. 95).

Also before the Court is Cenlar's Renewed Motion For Leave to File ("Motion for Leave") Motion For Sanctions ("Sanctions Motion") against Mr. Franklin. (Doc. 94). Mr. Franklin filed a Response to the Sanctions Motion on May 11, 2022 (Doc. 96).

## BACKGROUND

The R&R contains a comprehensive description of the facts and procedural history, which the Court will not restate here. As explained further below, Cenlar does not object to the Magistrate Judge's determination of what the material undisputed facts of the case are, but rather his characterization of certain evidence as creating a jury issue. The Court has reviewed the Magistrate Judge's determination of the undisputed facts of this case and finds no clear error.

Specifically relevant for present purposes, the Magistrate Judge determined "that there is no genuine issue of material fact that plaintiff gave Cenlar express consent on November 15, 2019 to be contacted via phone calls not initiated with an [automatic telephone dialing system ("ATDS")], including consent to calls made using an artificial or prerecorded voice." (R&R at 15, Doc. 86). Mr. Franklin did not timely object to this portion of the R&R, and the Court finds no clear error with the determination.

After that date, according to the R&R, Mr. Franklin testified that he sent Cenlar the following letter dated December 5, 2019:

> 1. I refer to several calls I received from your company specifically on December 3rd and 4th 2019. I was called by a computer or automated message that I did not consent to receive. If your company needs to call me, I prefer that you call manually or with a live person versus these unwanted automated generated calls to my cell phone.
>
> 2. In the past I've asked your company to contact me by mail only for any correspondence.
>
> Thanks for your swift attention to correcting this matter.

(R&R at 6, Doc. 86).

The Magistrate Judge determined that, "viewing the facts in a light most favorable to plaintiff, a reasonable jury could find that, upon receipt of the December 5, 2019 letter, Cenlar knew or had reason to know that plaintiff was no longer willing for Cenlar to contact his cell phone with an artificial or prerecorded voice." (R&R at 16, Doc. 86).

As to background facts underlying the Sanctions Motion, Cenlar contends that Mr. Franklin "is a clever, cunning man" who "has entrapped many companies over the last several years into making de jure or otherwise technical violations of the TCPA." (Sanctions Motion at 2, Doc. 94-3). Mr. Franklin is in Cenlar's reckoning, a "serial filer" (*Id.* at 8).[1] Cenlar asserts that after filing his Complaint,

---

[1] As evidence that Mr. Franklin is a serial plaintiff, Cenlar lists 24 other cases brought by him in the parties' Joint Preliminary Report and Discovery Plan (Doc. 61). However, a PACER Case Locater search for federal district court cases where "Cenlar" is a defendant reveals over 450 results, so it could just as easily be argued

3

Mr. Franklin destroyed or disposed of his computer, his cell phone, and his original notes from and about the calls he allegedly received. Based on his experience filing TCPA cases, Cenlar alleges that this disposal of evidence was knowing spoliation.

## LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1), the Court reviews the Magistrate Judge's Report and Recommendations for clear error if no objections are filed to the report, and it may "accept, reject, or modify" the magistrate's findings and recommendations. Where the parties do not file any objections, Section 636 does not require the district court to review any issue in dispute de novo. On the other hand, if a party files objections, the district court must determine de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b).

## DISCUSSION

The primary issue before the Court in reviewing the R&R is whether there is a genuine, material dispute of fact as to whether Mr. Franklin effectively revoked

---

that Cenlar is a serial defendant. *See also Gemborys v. Cenlar Agency, Inc.*, No. 4:20-cv-40006-TSH (D. Mass Jan 20, 2021, ECF Doc. 45) (finally approving $612,500 class action settlement relating to Cenlar's debt collection phone call practices). Certainly not all of those cases were meritorious, and a settlement does not admit liability, but regardless of merit, none of those cases against Cenlar played any role in the Court's decision. Likewise, the Court was not influenced by previous cases initiated by Mr. Franklin.

4

his consent to be contacted by Cenlar using an artificial or prerecorded voice in his December 5, 2019 letter. As Cenlar recognized, whether Mr. Franklin's revocation was effective centers on whether the revocation was made in a "'manner that clearly expresses a desire not to receive further messages' with respect to the TCPA." *Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1277 (11th Cir. 2017) (citing *In re Rules & Regulations Implementing the TCPA*, 30 F.C.C. Rcd. 7961, 2015 WL 4387780 (F.C.C. 2015)).

Cenlar objects to the Magistrate Judge's determination that there is a jury question as to whether the December 5, 2019 letter clearly expressed a desire to revoke his consent to be contacted by Cenlar using an artificial or prerecorded voice. Cenlar raises particular concern about the Magistrate Judge's use of the word "unclear" to describe the letter, arguing that "[a]llowing this case to proceed any further now that the Magistrate Judge has found that what the December Letter 'reasonably communicated is unclear' is inconsistent with the well-established authority cited above that revocation be clearly expressed in TCPA cases." (Objection at 8, Doc. 93). For the reasons that follow, while the Court may not have used the word "unclear" under the circumstances, the Court agrees with the Magistrate Judge's bottom-line conclusion.

As to the Sanctions Motion, for the reasons that follow, the Court will grant Cenlar leave to file the Sanctions Motion, but will deny the underlying motion.

I.       **The Effectiveness of Plaintiff's Revocation Presents a Jury Question.**

Cenlar's view of revocation under the TCPA seems to be a binary one — either revocation is unclear, in which case summary judgment against the plaintiff is appropriate, or clear, which would ostensibly call for summary judgment in the opposite direction. But the Eleventh Circuit has recognized an area of gray in between. As that court has noted, even where the contents and receipt of a purported revocation are undisputed, "that does not necessarily mean that summary judgment in anyone's favor is appropriate. As we have said on more than one occasion, '[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the district court should deny summary judgment.'" *Schweitzer*, 866 F.3d at 1278  (quoting *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 819 (11th Cir. 1999)).

Cenlar attempts to narrow *Schweitzer's* holding by asserting that in that case the intent to revoke was clear, but the scope of revocation was ambiguous. (Objection at 11, Doc. 93). The Court does not read that case to be so narrow; the Eleventh Circuit expressly recognized that an equivocal revocation could present a jury question. *Schweitzer*, 866 F.3d at 1278 ("A jury could certainly find that Ms. Schweitzer — like the protagonist of a recent hit song — was too equivocal, *cf.* Carly Rae Jepsen, Call Me Maybe, on Curiosity (Universal Music Canada 2012), but we do not think that the lack of specificity is fatal to her claim of partial revocation.");

6

*see also id.* at 1280 ("The 'issue of consent is ordinarily a factual issue[.]'") (citing *Thompson v. Louisiana*, 469 U.S. 17, 23 (1984)).

Cenlar's reliance on *Lucoff v. Navient Sols.*, LLC, 981 F.3d 1299 (11th Cir. 2020) is equally misplaced. In that case, a borrower orally revoked consent to be contacted by auto-dialers or pre-recorded messages. *Id.* at 1302. While still on the phone with his loan servicer, the operator directed the borrower to fill out a form which contained an explicit consent provision, effectively re-consenting him in the same conversation. *Id.* The Eleventh Circuit, in affirming the district court's grant of summary judgment, distinguished *Schweitzer* and held that no jury question was presented "because the language of the consent provision [the borrower] submitted in the demographic form was not vague." *Id.* at 1306 (citing *Schweitzer*, 866 F.3d at 1278–80). This ruling, that a consent which is not vague does not present a jury question, only reinforces the converse of that proposition: a revocation which is vague *can* present a jury question.

Here, the Magistrate Judge, applying the summary judgment standard, found that the December 5, 2019 letter's reference to two automated calls which Mr. Franklin insisted he "did not consent to receive" paired with his statement that he "prefer[s] that you call manually or with a live person versus these unwanted automated generated calls to my cell phone," could be construed by a reasonable jury to be a manifestation of intent to revoke his consent. The

7

Magistrate Judge referred to this letter as "unclear," but perhaps a better way to refer to it was "subject to more than one reasonable interpretation." It could be argued that since Mr. Franklin did consent to receive those calls (according to the portion of the R&R which the Court adopts without objection), his reference to a prior lack of consent was simply a misstatement of fact, and the following sentence was a mere statement of preference. However, a reasonable jury could also read the letter as a whole as manifesting a clear intent not to be contacted by automated calls, with the term "prefer" being used as a way to make a polite, but firm, request. *Cf.* MELVILLE, BARTLEBY, THE SCRIVENER (1853).[2] In sum, the Court's de novo review of this issue reveals no error by the Magistrate Judge, and the Court will adopt the R&R in full.

## II. The Court will not dismiss the TCPA claim as a discovery sanction.

Cenlar seeks dismissal of Mr. Franklin's TCPA claim on the grounds of spoliation. Specifically, Cenlar asserts that Mr. Franklin relies on a call log in this case consisting of the dates and times of the calls he received. (Sanctions Motion at 3, Doc. 94-3). However, Cenlar accuses Mr. Franklin of having destroyed the computer he prepared that call log on (depriving Cenlar of the purported

---

[2] In that short story, a lawyer employs a scrivener who, when asked to perform a task, invariably responds with "I would prefer not to." Ultimately, it becomes clear that the scrivener is disinclined to do anything, even where his recalcitrance puts his freedom and life on the line. The story is available online at https://www.bartleby.com/129/.

8

metadata thereon), and the cell phone that he allegedly received the calls on, as well as all of the sticky notes on which he wrote down the details of the calls. (*Id.* at 3–4). Despite this loss of the phone, Cenlar notes that before disposing of the phone, he transferred voicemails he received and captured them on a thumb drive with the intent of using them in this case.

"[A] finding of bad faith is a prerequisite to spoliation sanctions." *Zeitz v. Innsbruck Golf Resort, Inc.*, No. 2:15-CV-00218-RWS, 2016 WL 6193475, at *2 (N.D. Ga. Oct. 24, 2016) (citing *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1313 (N.D. Ga. 2011)). "To find bad faith, the court is not required to find malice." *Id.* (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 946 (11th Cir. 2005)). "It must, however, find more than mere negligence, 'which is insufficient to support spoliation sanctions under the law of this circuit." *Id.* (citing *In re Delta/AirTran*, 770 F. Supp. 2d at 1313).

Cenlar's evidence of purported bad faith is Mr. Franklin's prior experience with TCPA litigation as a plaintiff and his preservation of allegedly favorable information. (Sanctions Motion at 8, 11, Doc. 94-3). In response, Mr. Franklin asserts that he merely upgraded his cell phone and has given Cenlar everything in his possession in response to discovery requests, and that Cenlar did not attempt to confer in good faith prior to filing its motion. (Pl.'s Resp. to Sanction's Motion at 2, Doc. 96). The Magistrate Judge could not report with certainty that Mr.

9

Franklin acted in bad faith and denied Cenlar's prior motion without prejudice. (R&R at 19). While an argument could be made that Cenlar's renewed Sanctions Motion is in effect an appeal of a magistrate judge's order under Rule 72(a) subject to a clear error standard, the Court would agree with the Magistrate Judge's conclusion even under de novo review.

To determine bad faith, the Court first addresses whether Mr. Franklin had notice of his obligation to preserve this information. Paragraph 11(b) of the Parties' Joint Preliminary Report and Discovery Plan (Doc. 61), does account for electronic discovery of the information underlying the call log:

> 11. Discovery Limitations
>
> (b) Is any party seeking discovery of electronically stored information?
>
> __X__ Yes _____ No
>
> If "yes,"
>
> (1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g. accessibility, search terms, date limitations, or key witnesses) as follows: Defendant is seeking Plaintiff's emails, texts, phone records, evidence of communications (including but not limited to written, voice recording, or email) between Plaintiff and Defendant, and evidence of communications (including but not limited to written, voice recording, or email) between Plaintiff and anyone else regarding the allegations in this lawsuit from April 2019 to present. Defendant is also seeking all of Plaintiff's cell phone

> records, or phone bills, from September 2019 to present for all cell phones used by Plaintiff during that time.
>
> (2) The parties have discussed the format for the production of electronically stored information (e.g., Tagged Image File Format (TIFF or .TIF files), Portable Document Format (PDF), or native), method of production (e.g., paper or disk), and the inclusion or exclusion and use of metadata, and have agreed as follows: Plaintiff shall produce all electronically stored data in its native form, with the exception of text messages. Text messages may be produced in .pdf format by "screenshot."

Cenlar thus placed Mr. Franklin on notice that it was seeking his "phone records" and "evidence of communications (including but not limited to written, voice recording, or email) between" it and Mr. Franklin, and that Mr. Franklin "shall produce all electronically stored data in its native form." Therefore, Mr. Franklin was on some form of notice that Cenlar was requesting the native version of his phone records and call log.

However, "evidence of communications" is enormously broad, and it is entirely feasible that Mr. Franklin would have conceived of his call log as sufficient to satisfy this request. The Court does not imagine a reasonable person would understand every scrap of paper upon which a notation about a call was made would fall under that definition absent more clarification. The record is unclear as to whether Cenlar actually served discovery requests which specifically targeted the call log's supporting information or whether it actually raised a concern about

the form the call log's production took at the time it was received. In any case, it is apparent that Cenlar did not attempt to confer with Mr. Franklin prior to bringing its Sanctions Motion, which would have provided additional context for determining whether bad faith was indeed present in this case.

As to the loss of the cell phone, Mr. Franklin's explanation that the phone was upgraded is a reasonable explanation. Moreover, in light of the fact that cell phones have essentially become a "'feature of human anatomy,'" it was incumbent on Cenlar to conduct any ESI discovery on Mr. Franklin's phone with some degree of diligence based on the natural risk of damage or loss to the phone. *Carpenter v. United States*, 138 S. Ct. 2206 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)) (noting that most people "compulsively carry cell phones with them all the time"). Nowhere in the Sanctions Motion does Cenlar outline its diligence on the matter.

Finally, even if Cenlar could show bad faith, the Court finds any prejudice minimal. Cenlar asserts that "[h]ad Plaintiff not then destroyed these critical pieces of evidence, Cenlar would have been entitled to have its auditors and experts examine Plaintiff's cell phone to recover relevant data, messages, metadata, and other information relevant to the case." (Sanctions Motion at 13, Doc. 94-3). Even assuming that this level of forensic discovery would be proportional in this TCPA case, *see* Fed. R. Civ. P. 26(b)(1), the Court is skeptical of Cenlar's claims of

prejudice. It is somewhat hard to fathom that Cenlar, operating in a heavily regulated field such as automated phone contact, would not maintain its own log of outgoing calls. Relatedly, while the evidence supporting the call log (the sticky notes, phone records, and metadata) is material in that it tends to support or refute the allegation that a call was made, its primary value is largely in impeaching the admissibility and veracity of the call log, something which Cenlar can still do by pointing to the absence of the supporting evidence.[3]

In summary, the Court does not excuse Mr. Franklin's loss of the evidence on the phone or laptop but determines that on the record before it such loss is at most negligence, not bad faith. The Court's ruling does not necessarily foreclose the possibility that, in the event that this case goes to trial, Cenlar may be able to introduce evidence and present argument regarding Mr. Franklin's failure to retain the call log supporting documents.[4]

---

[3] Cenlar raises a serious question of whether "the method or circumstances of preparation [of the log] indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Cenlar may certainly raise this issue in connection with trial.

[4] Cenlar briefly addresses the possibility that the "best evidence rule" may apply to the call log, but that rule only applies where the contents of an original document are at issue. Fed. R. Evid. 1002. While the copy phone log may be the best evidence of the contents of the original call log, it is by no means the best evidence of the calls Mr. Franklin actually received.

## CONCLUSION

For the above reasons, the Court **OVERRULES** Cenlar's Objection to the Magistrate Judge's R&R (Doc. 93) and **ADOPTS IN FULL** the R&R (Doc. 86). Accordingly, Cenlar's Motion for Summary Judgment (Doc. 75) is **GRANTED IN PART** as to calls using an artificial or prerecorded voice placed before Cenlar received Mr. Franklin's letter dated December 5, 2019 and **DENIED IN PART** as to later alleged calls.

Cenlar's Renewed Motion for Leave to File Motion for Sanctions against Mr. Franklin (Doc. 94) is **GRANTED** but its underlying Motion for Sanctions (Doc. 94-2) is **DENIED**.

The Parties are **DIRECTED** to submit a Proposed Consolidated Pretrial Order under LR 16.4, NDGa by **NO LATER THAN** June 21, 2022. The Clerk is directed to submit this matter to the undersigned on June 22, 2022.

The Parties are reminded of the availability of the Magistrate Judge to conduct a jury or nonjury trial of this matter upon their consent. The Parties are advised that they are free to withhold consent without adverse substantive consequences. The Clerk is directed to provide a copy of Form 81, Federal Rules

of Civil Procedure Appendix of Forms (AO 85) Notice, Consent, and Reference of a Civil Action to a Magistrate Judge to all Parties.

**SO ORDERED** this 26th day of May, 2022.

                                                Victoria Marie Calvert
                                                United States District Judge