IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN, § § Plaintiff, § § v. § § CENLAR FSB d/b/a CENTRAL LOAN § ADMINISTRATION AND § REPORTING (CENLAR), § § Defendants. § § § | Civil Action File No.: 1:20-CV-01410-VMC |

**DEFENDANT CENLAR FSB'S REPLY TO PLAINTIFF'S BRIEF
AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Cenlar FSB d/b/a Central Loan Administration Reporting ("Cenlar"), by and through the undersigned counsel, hereby files its Reply to Plaintiff's Brief and Memorandum of Law in Opposition Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1.

**I. INTRODUCTION**

Plaintiff, Ricky R. Franklin ("Plaintiff"), executed a Settlement Agreement with CitiMortgage, Inc. ("CitiMortgage"), which included a release of his pending claims against Cenlar (Doc. 137-6). When Cenlar learned of the Agreement and

90470755.1

requested that Plaintiff drop his claims against Cenlar, Plaintiff declined. As a result, Cenlar filed its Motion for Summary Judgment on June 15, 2023 (Doc. 137). In his response to that Motion, Plaintiff does not deny the existence of the Settlement Agreement or its terms. Instead, Plaintiff claims that (1) Cenlar withheld documents and information in discovery upon which it seeks summary judgment (2) Cenlar was not a subservicer of CitiMortgage, and (3) Cenlar does not have standing to enforce the Settlement Agreement (Doc. 141 at 7-12).

Each of Plaintiff's arguments fail. The discovery requests and responses referenced by Plaintiff did not seek the documents or information upon which Cenlar predicates its Motion for Summary Judgment (which principally is the Settlement Agreement itself – something which Plaintiff *never* disclosed to Cenlar). Cenlar's status as a subservicer for CitiMortgage is not subject to reasonable dispute – and certainly not something within the personal knowledge of Plaintiff. Finally, Cenlar has standing to enforce the Settlement Agreement as a third-party beneficiary of the Settlement Agreement. The Court should reject Plaintiff's arguments and enter summary judgment in Cenlar's favor.

**II. ARGUMENT**

    **A. CENLAR'S RESPONSES TO PLAINTIFF'S DISCOVERY.**

Plaintiff argues Cenlar withheld documents and information in discovery upon which Cenlar now uses in its efforts to obtain summary judgment (Doc. 141 at

5-6). Consequently, Plaintiff asks the Court to deny summary judgment and sanction Cenlar. (*Id.* at 2.) As a preliminary matter, Cenlar did not become aware of the Settlement Agreement (which Plaintiff executed on May 10, 2022 and did not disclose to Cenlar) until well after the conclusion of discovery period and the time for initial disclosures. As such, the issue of the Plaintiff's release of claims and, in turn, Cenlar's role as subservicer for CitiMortgage were not yet pertinent to the Parties' claims or defenses.

In an effort to avoid his waiver and release of the claims he pursues in this case, Plaintiff misdescribes his discovery requests and Cenlar's responses to those requests. But Plaintiff's requests for discovery did not seek any of the documents or information upon which Cenlar now seeks summary judgment.

First, Plaintiff claims he sought production of the Subservicing Agreement between CitiMortgage and Cenlar in a request for production of documents (Doc. 141 at 5, referencing Request for Production No. 5). This is not true. In reality, Plaintiff's Request for Production No. 5 seeks documents between Cenlar and anyone hired by Cenlar to make calls to Plaintiff.[1]

> **5. PROVIDE:** All agreements, contracts, correspondence, communications, or emails with any Third Party to send, collect, aggregate, pool together any calls sent on your behalf to consumers as well as Plaintiffs cellphone as alleged in the complaint.

---

[1] Plaintiff defined "You" as Cenlar and "Third Party" as a "business or legal entity not owned or controlled by Cenlar … engaged by Cenlar to call on its behalf". (Ex. A at 2-3.)

90470755.1

(*Id.*).

Cenlar objected and responded "None exist". (Ex. C at 6.) The Subservicing Agreement between CitiMortgage and Cenlar is not responsive to this request.

Next, Plaintiff alleges that he inquired if Cenlar was acting on behalf of CitiMortgage in Interrogatory No. 4 (Doc. 141 at 5). This is, once again, inaccurate. Interrogatory No. 4 requests the date and times of calls made to Plaintiff by persons acting on behalf of Cenlar – not CitiMortgage – including, oddly, marketing firms[2].

> **4. INTERROGATORY:** State and identify the name, address, and phone number, date and time for each and every agent of the Defendant Cenlar or any person or entity placing calls by or on behalf of for the benefit of Cenlar which includes any and all other third parties involved in placing calls to Plaintiff's cellphone.
>
> a. In identifying the third party marketing firm in interrogatory 4, please state the relationship of the marketing firm and whether or not the marketing firm was acting on behalf of Citi.

(*Id.*).

Cenlar objected and advised it would respond by producing consolidated notes and call logs which will include references of calls made to Plaintiff. (Ex. D at 8.) Cenlar also stated that no third-party agent [of Cenlar] made calls to Plaintiff. Cenlar's objection to subsection "a." also noted that the Interrogatory referred to "Citi" without explaining any connection that "Citi" might have to the claims or defenses in this matter. (*Id.*).

---

[2] Plaintiff defined "You" as Cenlar and "Third Party" as a "business or legal entity not owned or controlled by Cenlar … engaged by Cenlar to call on its behalf". (Ex. B at 2-3.)

4

Finally, Plaintiff claims that he sought information that would include Cenlar's relationship with CitiMortgage in Interrogatory No. 6 (Doc. 141 at 6). However, Interrogatory No. 6 simply seeks information concerning the specific calls made to the Plaintiff.

> **6. INTERROGATORY:** Set forth the date and substance of all communications regarding any telephone calls, and identify all parties.

(*Id.*).

Cenlar objected and advised it would respond by producing consolidated notes and call logs which will include references of calls made to Plaintiff. (Ex. D at 8.)

A plain reading of his discovery requests reveal Plaintiff's claim that Cenlar wrongfully withheld documents and information in discovery upon which it has sought summary judgment fails.

## B. CENLAR'S STATUS AS SUBSERVICER.

Plaintiff claims that Cenlar is a "new servicer and not a sub-servicer" and therefore, summary judgment should be denied[3] (Doc. 141 at 15.) However, Plaintiff provides no evidentiary support for his claim, nor is it clear how Plaintiff could possibly have personal knowledge as to the inner workings and records of

---

[3] Plaintiff simultaneously argues that Cenlar "was never legally assigned the loan" by assignment of deed recorded in the Official Records (Doc. 141 at 3). However, the issue of recording an assignment of deed in accordance with O.C.G.A. § 44-14-64(a) is not relevant to any issue in this case.

Cenlar and CitiMortgage. Plaintiff does not claim to have worked for Cenlar or CitiMortgage. Nor does Plaintiff present any evidence that would refute Cenlar and CitiMortgage's business records which support its Motion for Summary Judgment.

Moreover, subservicing is – by name and definition – a form of loan servicing. *See e.g.,* 24 C.F.R. Sec. 1024.31 defining "subservicer" as "a servicer who … [performs servicing] on behalf of the master servicer". Thus, Cenlar's status as both a new servicer and subservicer are not mutually exclusive.

In contrast to Plaintiff, Cenlar provided sworn testimony and documentary evidence, including the Subservicing Agreement and loan specific records, to establish its position as subservicer of Plaintiff's loan from April 1, 2019 through May 3, 2020 – when it made the telephone calls upon which Plaintiff predicates this entire litigation (Subservicing Decl., Doc. 137-3). The Subservicing Agreement defines Cenlar as "Subservicer" and CitiMortgage, Inc. as "Owner/Servicer", and provides in part that "Subservicer hereby agrees to subservice the Mortgage Loans on behalf of Owner/Servicer and its Investors pursuant and subject to the terms of this Agreement" (Doc. 137-3 at 6-12). Consistent with the Subservicing Agreement, CitiMortgage and Cenlar mailed a letter to Plaintiff on or about March 15, 2019, which stated in pertinent part:

> We are proud of the service we provide to mortgage customers. To continue this tradition, we have entered into an agreement with Cenlar FSB d/b/a Central Loan Administration & Reporting ("Cenlar FSB")

6

where CitiMortgage will utilize Cenlar FSB to provide various servicing functions.

(Doc. 137-3 at 15-23.)

### C. CENLAR'S RIGHT TO ENFORCE THE SETTLEMENT AGREEMENT.

Plaintiff contends Cenlar is not a party to the Settlement Agreement between Plaintiff and CitiMortgage and therefore has no standing to enforce it (Doc. 141 at 10-11).  However, under Georgia law, a third party may enforce the provisions of a contract if the third-party was a beneficiary of the contract.  *In re Buckhead Oil Co., Inc.,* 454 B.R. 242, 249 (N.D. Ga. 2011) citing O.C.G.A. § 9–2–20(b).  Here, the Settlement Agreement memorializes the Plaintiff and CitiMortgage's joint intention to effectuate a release of any claims Plaintiff had against not just CitiMortgage, but numerous other releasees, including CitiMortgage's sub-servicers and agents (Doc. 137-6 at 1-2).  In executing the Settlement Agreement, Plaintiff also confirmed that it was "the intention and effect of this release to discharge all claims that the Releasors have or may have had against Releasees up until and including the Effective Date[4]" (Doc. 137-6 at 2).  Thus, as subservicer and agent of CitiMortgage when it made telephone calls to Plaintiff, Cenlar is an intended third-party beneficiary of the Settlement Agreement with rights to enforce under well-established Georgia law.

---

[4] The Effective Date of the Settlement Agreement is May 10, 2022 (Doc. 137-6 at 4).

## III. CONCLUSION

Plaintiff executed a Settlement Agreement which included a release of his claims against Cenlar. His arguments in opposition to summary judgment are factually and legally misguided. Summary judgment in favor of Cenlar is warranted.

WHEREFORE, Cenlar respectfully requests that the Court enter summary judgment in its favor and against Plaintiff, and for such other and further relief as the Court deems just and proper.

Dated:  July 19, 2023

**POLSINELLI PC**

*/s/ Brendan Herbert*
Brendan I. Herbert
Florida Bar No. 76925
315 S. Biscayne Blvd, Suite 400
Miami, Florida  33131
Phone: (305) 921-1820
*bherbert@polsinelli.com*
(Special Appearance)

-and-

Gwendolyn J. Godfrey
Georgia Bar No. 153004
*ggodfrey@polsinelli.com*
One Atlantic Center, #1100
1201 W. Peachtree St., NW
Atlanta, Georgia  30309
Phone: (404) 253-6000

*Attorneys for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rules 5.1B and 5.1C, using 14-point Times New Roman font.

> */s/ Brendan Herbert*
> Brendan I. Herbert
> Florida Bar No. 76925

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2023, I electronically filed the foregoing **DEFENDANT CENLAR FSB'S REPLY TO PLAINTIFF'S BRIEF AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system. I further certify that I mailed the foregoing document by certified U.S. mail, return receipt requested, and first-class mail to the following:

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281

> */s/ Brendan Herbert*
> Brendan I. Herbert
> Florida Bar No. 76925
>
> *One of the Attorneys for Cenlar FSB*

90470755.1