IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Aug 24 2023

KEVIN P. WEIMER, Clerk

By: s/Kari Butler
Deputy Clerk

RICKY R. FRANKLIN,

    Plaintiff <u>pro se</u>,

  v.

CENLAR FSB
*doing business as*
Central Loan Administration and
Reporting (Cenlar),

    Defendant.[1]

CIVIL ACTION FILE NO.

1:20-CV-1410-VMC-WEJ

# ORDER AND
# <u>FINAL REPORT AND RECOMMENDATION</u>

This matter is before the Court on defendant Cenlar FSB's ("Cenlar") second Motion for Summary Judgment [137] and plaintiff <u>pro se</u> Ricky R. Franklin's Motion to Strike Exhibit A [142] thereto.

On May 26, 2022, the Honorable Victoria M. Calvert, United States District Judge, adopted [97] the undersigned's March 30, 2022 Final Report and

---

[1] The Court dismissed [58] former defendant Carrington Mortgage Services, LLC ("Carrington") from this action on May 13, 2021.

Recommendation [86], thereby dismissing all but plaintiff's Telephone Consumer Protection Act ("TCPA") claim against Cenlar. (See Second Am. Compl. [34] ¶¶ 51-52 (Count II).) As discussed infra, the parties were preparing for trial when Cenlar discovered that plaintiff had released his TCPA claim via a Confidential Settlement and Release Agreement (the "Settlement Agreement") [137-6] in a related case against CitiMortgage, Inc. ("Citi"), Franklin v. CitiMortgage, Inc., Case No. 1:19-CV-03852-MLB (N.D. Ga. filed Aug. 26, 2019). (See Def.'s Mem. [137-2] 1-2 & Ex. [137-6] ("Settlement Agreement").) Defendant filed the instant Motion for Summary Judgment, which Judge Calvert referred to the undersigned.

For the reasons set forth below, the undersigned **DENIES** plaintiff's Motion to Strike and **RECOMMENDS** that Cenlar's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED WITH PREJUDICE**.

I.  **PLAINITFF'S MOTION TO STRIKE**

Plaintiff asks the Court to strike Exhibit A ("Subservicing Agreement") to Cenlar's Motion for Summary Judgment as inadmissible and prejudicial. (Pl.'s Mot. Strike [142] 1-2.) The Subservicing Agreement is attached to a "Declaration Regarding Subservicing of Mortgage Loan" signed by Diane McCormick, Cenlar's Vice President of Document Execution. (McCormick Decl. [137-3] Ex. A, at 6-11.) Plaintiff asserts that the document is responsive to his Request for Production

No. 5 and Interrogatory Nos. 4, 4a, and 6, and argues that defendant's failure to produce the document during discovery precludes its use as evidence with regard to Cenlar's pending Motion and at trial. (Pl.'s Mot. Strike [142] 1-2; Pl.'s Resp. [141] 5-6.)

In response, Cenlar disputes plaintiff's characterization of his Request for Production No. 5 and argues that the Subservicing Agreement is not responsive to any of plaintiff's discovery requests, including Interrogatory Nos. 4 and 6. (Def.'s Resp. [146] (referring the Court to Def.'s Reply [143]).) Cenlar explains that it did not learn of plaintiff's Settlement Agreement with Citi (which plaintiff did not disclose to Cenlar when he executed it on May 10, 2022) until well after the end of discovery.[2] (Def.'s Reply [143] 3.) As a result, defendant contends that its role as Citi's subservicer (and one of the entities subject to plaintiff's release of claims) was not yet relevant to the parties' claims or defenses in this case. (Id.)

Plaintiff seeks recourse pursuant to Federal Rule of Civil Procedure 37(c), which governs the failure to comply with discovery rules requiring the disclosure or supplementation of information and documents responsive to discovery requests. See Fed. R. Civ. P 37(c)(1). Pursuant to subsection (c)(1):

---

[2] Discovery ended on November 30, 2021. (Scheduling Order [62].)

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Id. The Court summarizes the declaration and exhibit at issue before determining whether the information therein is responsive to plaintiff's discovery requests.

### A.  McCormick Declaration and the Subservicing Agreement

Ms. McCormick serves as Vice President of Document Execution for Cenlar. (McCormick Decl. ¶ 2.) In that role, her responsibilities include reviewing, answering questions about, and researching mortgage loans that Cenlar services and previously serviced. (Id.) Ms. McCormick has personal knowledge of the regular business practices for maintaining such records. (Id. ¶ 3.) Additionally, she has received training on and is personally familiar with Cenlar's subservicing relationship with Citi. (Id. ¶ 4.)

Ms. McCormick has worked with and is generally familiar with the Subservicing Agreement between Cenlar and Citi. (McCormick Decl. ¶ 4 & Ex. A

4

[137-3], at 6-12.)  On January 27, 2017 Citi and Cenlar entered into the Subservicing Agreement.  (Id. Ex. A [137-3], at 6-12.)  Via that contract, Cenlar agreed to subservice mortgage loans on behalf of Citi.  (Id. Ex. A [137-3], at 9.)

Based on Cenlar's business records for plaintiff's loan, Cenlar began subservicing his mortgage for Citi on April 1, 2019.  (McCormick Decl. ¶ 6 & Ex. B [137-3], at 14.)  Citi and Cenlar sent a joint letter to plaintiff informing him that Cenlar would begin subservicing his loan for Citi on that date.  (Id. ¶ 7 & Ex. C [137-3], at 18-19.)  From April 1, 2019 through May 4, 2020, all of the communications between Cenlar and plaintiff (including but not limited to telephone calls) were made by Cenlar in its capacity as subservicer for Citi.  (Id. ¶ 9.)  On May 4, 2020, Cenlar transferred servicing of plaintiff's loan to Carrington and informed him of that change.  (Id. ¶ 8 & Ex. D [137-3], at 27.)

**B.     Request for Production No. 5 and Interrogatory Nos. 4, 4a, and 6**

Plaintiff's Request for Production No. 5 asked Cenlar to produce:  "All agreements, contracts, correspondence, communications, or emails with any Third Party to send, collect, aggregate, pool together any calls sent on your behalf to

consumers as well as Plaintiffs cellphone as alleged in the complaint."[3] (Pl.'s Resp. Ex. E [141-5], at 4.)  Cenlar responded:  "None exist."  (Id.)

>Plaintiff's Interrogatories No. 4 and 4a ask Cenlar to:
>
>State and identify the name, address, and phone number, date and time for each and every agent of the Defendant Cenlar or any person or entity placing calls by or on behalf of for the benefit of Cenlar which includes any and all other third parties involved in placing calls to Plaintiffs cellphone.
>
>. . .
>
>a. In identifying the third party marketing firm in interrogatory 4, please state the relationship of the marketing firm and whether or not the marketing firm was acting on behalf of Citi.

(Pl.'s Resp. Ex. F [141-6], at 5-6.)  In response to Interrogatory No. 4, Cenlar stated that it would "provide consolidated notes and call logs which will include references of calls made to Plaintiff," and that "no third-party agent made calls to

---

[3] Plaintiff's discovery requests defined "Third Party" as:

>[A]ny Companies overseas or individual, partnership, association, corporation, joint venture, or other business or legal entity not owned or controlled by Cenlar or any person that does not receive an annual salary from Cenlar including but not limited to affiliates, agents, subsidiaries and vendors of Cenlar For the purpose of these productions, Cenlar means Cenlar or any THIRD PARTY engaged by Cenlar to call on its behalf.

(Pl.'s Resp. Ex. E [141-5], at 3 & Ex. F [141-6], at 3.)

Plaintiff." (Id. at 6.) Cenlar objected to Interrogatory No. 4a "because it refers to a non-party, Citi, without explaining any connection that Citi might have to the claims or defenses in this matter." (Id.)

Plaintiff's Interrogatory No. 6 asks Cenlar to "[s]et forth the date and substance of all communications regarding any telephone calls and identify all parties." (Pl.'s Resp. Ex. F [141-6], at 6.) Despite objecting to the breadth of that interrogatory, Cenlar stated that it would "provide its call logs and consolidated notes which will include references to calls made to Plaintiff." (Id. at 7.)

### C.     Defendant's Evidence Is Admissible

Plaintiff's Request for Production No. 5 and Interrogatories Nos. 4, 4a, and 6 clearly seek to "drill down" into Cenlar's business dealings with or use of another entity to contact plaintiff. Cenlar's relationship to Citi bank and the Subservicing Agreement are simply not responsive to those discovery requests. Plaintiff repeatedly asks Cenlar to identify third parties acting on Cenlar's behalf, but he does not ask if Cenlar is acting on behalf of another entity, i.e., Citi. Moreover, it appears insincere of plaintiff to accuse Cenlar of hiding its relationship to Citi, when plaintiff mentions Citi in Interrogatory No. 4a, seeking any additional entities (like Cenlar) acting on behalf of his servicer. Notably, Citi informed plaintiff in a March 15, 2019 letter that it had "entered into an agreement with [Cenlar], where

7

[Citi] will utilize [Cenlar] to perform various servicing functions" and instructed plaintiff to make all mortgage payments to Cenlar beginning April 1, 2019. (McCormick Decl. ¶ 7 & Ex. C [137-3], at 18-19.)[4] Ironically, as discussed infra Part II.D, it is plaintiff who withheld relevant information from defendant, i.e. the Settlement Agreement.

Accordingly, because the Subservicer Agreement is not responsive to plaintiff's discovery requests, the Court **DENIES** his Motion to Strike Exhibit A [142]. Thus, the undersigned **REPORTS** that the Court may consider that document in ruling on defendant's Motion for Summary Judgment.

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Cenlar seeks entry of summary judgment on plaintiff's remaining TCPA claim on the basis that, as subservicer on plaintiff's mortgage loan with Citi during the Operative Call Period, it is a third-party beneficiary of the Settlement Agreement between plaintiff and Citi in a related case. (See generally Def.'s Mem. [137-2].) The Court addresses the parties proposed statements of material fact with

---

[4] Because plaintiff recognizes only the first two substantive pages of the March 15, 2019 letter attached to Ms. McCormick's Declaration, the Court does not consider the attachments to that letter. (See R-DSMF ¶ 6 ("The letter that Citi send to Plaintiff is 2 pages long . . . Plaintiff has never seen the other pages attached to Defendant[']s Exhibit C.").)

the understanding that it may consider the Subservicer Agreement for the reasons set forth supra Part I.C.

To assist with framing the undisputed material facts, Local Civil Rule 56.1 requires certain filings by the parties in conjunction with a summary judgment motion. Cenlar as movant filed a Statement of Undisputed Material Facts [137-1] ("DSMF"), to which plaintiff responded. (Pl.'s Resp. to DSMF ("R-DSMF') [141-1]).) At the end of R-DSMF, plaintiff included his own "Statement of Additional Disputed Facts" (id. at 9 ("PSAMF")), to which Cenlar filed a response. (Def.'s Resp. PSAMF [144] ("R-PSAMF").)

The Court uses the parties' proposed facts and responses thereto as the basis for the Statement of Facts under the following conventions. When a party admits a proposed fact, the Court accepts that fact as undisputed for the purposes of this Report and Recommendation and cites only to the proposed fact. When a party denies a proposed fact, the Court reviews the record cited and determines whether that denial is supported, and if it is, whether any fact dispute is material. To reflect the record more accurately, the Court sometimes modifies a proposed fact per the record cited by the party or in the opposing party's response. The Court also includes facts drawn from its review of the record, see Fed. R. Civ. P. 56(c)(3),

excludes proposed facts that are immaterial [5] or stated as an issue or legal conclusion, and rules on objections to proposed facts. See N.D. Ga. Civ. R. 56.1(B)(1)(c). Finally, the Court views all proposed facts in light of the standards for summary judgment set out below.

### A.  Plaintiff's TCPA Claim Against Cenlar

There is one claim remaining in this action against one defendant, Cenlar (DSMF ¶ 1); the Court has dismissed all other claims and defendants (id. ¶ 3). Plaintiff's remaining claim alleges that Cenlar violated the TCPA (id. ¶ 2) by contacting him "over 62 (sixty-two) times by means of artificial pre-recorded voice messages to a cellphone or pager in violation of 47 U.S.C. § 227(b)(1)(A)(iii)." (DSMF ¶ 4.) Plaintiff contends Cenlar made the calls at issue between October 24, 2019 and April 1, 2020 (the "Operative Call Period"). (Id. ¶ 5.)

During the Operative Call Period, Cenlar was the subservicer for Citi in connection with plaintiff's residential mortgage loan, secured by the property located at 708 Brambling Way, Stockbridge Georgia 30281. (DSMF ¶ 6.)[6] Citi

---

[5] The Court excludes the following proposed facts as immaterial: DSMF ¶¶ 10, second part, 11; PSAF ¶¶ 1-2.

[6] The Court overrules plaintiff's repeated objections to the admissibility of Cenlar's proposed facts identifying itself as the subservicer on his mortgage loan.

notified plaintiff of its relationship with Cenlar in a March 15, 2019 letter, which stated in relevant part: "We are proud of the service we provide to mortgage customers. To continue this tradition, we have entered into an agreement with [Cenlar], where [Citi] will utilize [Cenlar] to perform various servicing functions." (Id. ¶ 8, as modified by R-DSMF ¶ 8.) That letter also identified the loan as bearing a Citi account number ending in 0060. (Id. ¶ 9.)

Cenlar assumed subservicing rights to plaintiff's mortgage loan on April 1, 2019—almost six months before the Operative Call Period. (DSMF ¶ 7.) All of the communications between plaintiff and Cenlar during the Operative Call Period (including but not limited to telephone calls by Cenlar to plaintiff) were made by

---

(See R-DSMF ¶¶ 6-8, 10, 12, 15.) Those objections are argumentative and ignore the second paragraph in Citi's March 15, 2019 letter, notifying plaintiff that Citi had "entered into an agreement with [Cenlar], where [Citi] will utilize [Cenlar] to perform various servicing functions." (McCormick Decl. ¶ 7 & Ex. C [137-3], at 15-19.) Moreover, as discussed supra Part I.C., plaintiff has failed to point to any discovery request by him seeking information relevant to the relationship between Citi and Cenlar. Rather, plaintiff repeatedly sought information regarding any entity Cenlar used to communicate with plaintiff on Cenlar's behalf. (See Pl.'s Resp. Ex. E [141-5], at 4; id. Ex. F [141-6], at 5-6.) Accordingly, the Court accepts Cenlar's representation that it acted on Citi's behalf as the subservicer of plaintiff's loan because plaintiff has failed to directly refute that fact or state a valid objection to its admissibility.

11

Cenlar in its capacity as subservicer of the loan for Citi. (Id. ¶ 12.) Cenlar subserviced the loan on Citi's behalf through May 3, 2020. (Id. ¶ 10, first part.)

### B. Plaintiff's Settlement Agreement with Citi

On August 26, 2019, plaintiff filed a lawsuit against Citi in which he alleged that it also violated the TCPA in connection with the mortgage loan at issue here—Franklin v. CitiMortgage, Inc., No. 1:19-CV-03852-MLB (N.D. Ga. filed on Aug. 26, 2019). (DSMF ¶ 13.)[7] On June 3, 2022, plaintiff dismissed that lawsuit via a stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (DSMF ¶ 14.)

Plaintiff and Citi resolved that lawsuit according to the terms memorialized in the May 10, 2022 Settlement Agreement, which includes the following release provision:

> 3. <u>Mr. Franklin's Release</u>. Mr. Franklin, for himself and his heirs, executors, administrators, representatives, existing or former spouses, children, assigns, and any and all persons or entities claiming by or through them, (collectively, the "Releasors"), hereby releases and forever discharges CitiMortgage, its agents, employees, officers, directors, owners, assigns, attorneys, representatives, sponsors, subsidiaries, parents, affiliates, insurers, investors, successors, predecessors, shareholders, sub-servicers, and all other firms, persons,

---

[7] The Court overrules plaintiff's materiality objection to DSMF ¶ 13 as argumentative; the mortgage loan at issue clearly is material to plaintiff's relationship with Cenlar. (See R-DSMF ¶ 13.)

> corporations or entities, whether named or unnamed, none of whom admit any liability to Mr. Franklin and all of whom expressly deny any liability and whom shall be deemed intended third-party beneficiaries of this Agreement (collectively, the "Releasees"), from any and all claims, demands, damages, actions, causes of action, suits, subrogation interests, liens, costs, expenses, attorneys' fees, judgments, sums of money of claims of any kind or nature whatsoever, including, but not necessarily limited to all claims, known and unknown, both to person and property, which were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Loan or the Lawsuit. Mr. Franklin specifically acknowledges and agrees that the scope of this release includes, but is not limited to, all claims or matters alleged or that could have been alleged against CitiMortgage in the Lawsuit. It is in the intention and effect of this release to discharge all claims that the Releasors have or may have against the Releasees up until and including the Effective Date.

(DSMF ¶ 15; see also Def.'s Mem. Ex. [137-6], at 1-2.) Plaintiff acknowledged in the Settlement Agreement that the contract related to his mortgage loan bearing the loan number ending in 0060. (DSMF ¶ 16; see also Def.'s Mem. Ex. [137-6], at 1 ("[Citi] serviced a mortgage loan owned by Mr. Franklin, and, while it serviced the loan, that loan bore the number . . . 0060 . . . .").) Finally, the Settlement Agreement states that it "shall be governed by the laws of the state of Georgia" and that any dispute regarding the contract shall be submitted to "the United States District Court for the Northern District of Georgia, Atlanta Division." (Def.'s Mem. Ex. [137-6], at 3.)

### C. SUMMARY JUDGMENT STANDARD

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 840 (11th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Those materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate.  Rice-Lamar, 232 F.3d at 840.  "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party."  Id. (citing Anderson, 477 U.S. at 255).

In deciding a summary judgment motion, the Court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried.  Anderson, 477 U.S. at 251.  The applicable substantive law will identify those facts that are material.  Id. at 248.  Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment.  Id.  Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  For factual issues to be "genuine," they must have a real basis in the record.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  When the record could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial."  Id. at 587.

15

### D. ANALYSIS

Cenlar argues that Mr. Franklin released the instant TCPA claim when he signed the May 10, 2023 Settlement Agreement because it is a third-party beneficiary of that contract as subservicer of plaintiff's loan on behalf of Citi. (Def.'s Mem. [137-2] 7; Def.'s Reply [143] 5-6.) Cenlar contends that Georgia law permits third-party beneficiaries to enforce contract provisions and that plaintiff's TCPA claim must be dismissed under the Settlement Agreement. (Def.'s Mem. [137-2] 7-8; Def.'s Reply [143] 7.) In support of its position, defendant points to the Settlement Agreement's broad release provision, which includes an agreement by plaintiff to discharge all claims against Citi's agents and subservicers (named or unnamed) that are related in any way to the mortgage loan. (Def.'s Mem. [137-2] 7-9; Def.'s Reply [143] 7.)

Plaintiff contends that defendant brought the instant Motion in "bad faith" because it "ambush[ed]" him with the Subservicing Agreement before trial. (Pl.'s Resp. [141] 1-2, 7-10.) Plaintiff also argues that Cenlar is not a party to his Settlement Agreement with Citi and has no standing to enforce that contract because Citi never assigned his mortgage loan to Cenlar. (Id. at 2-3, 10-11.)

The Settlement Agreement is governed by Georgia law, which permits "[t]he beneficiary of a contract made between other parties for his benefit [to] maintain

an action against the promisor of the contract." O.C.G.A. § 9-2-20(b). Courts have interpreted that statute to permit a third party to enforce a contract if it "clearly appear[s] from the contract that it was intended for [the third party's] benefit." Backus v. Chilivis, 224 S.E.2d 370, 372 (Ga. 1976). Moreover, "[i]t is not necessary for the third-party beneficiary to be specifically named in the contract, but the contracting parties' intention to benefit the third party must be shown on the face of the contract." Boller v. Robert W. Woodruff Arts Ctr., Inc., 716 S.E.2d 713, 717 (Ga. Ct. App. 2011) (internal quotation marks and citation omitted).

Where, as is the case here, the parties do not dispute which writing is the operative contract and its terms are not ambiguous, third-party beneficiary status is a question of law. See Murray v. ILG Techs., LLC, 378 F. Supp. 3d 1227, 1237 (S.D. Ga. 2019) (citing Dominic v. Eurocar Classics, 714 S.E.2d 388, 391 (Ga. Ct. App. 2011)). In the Settlement Agreement, the parties explicitly extend plaintiff's release of claims related to his mortgage loan to Citi's "agents" and "sub-servicers," "whether named or unnamed." (Def.'s Mem. Ex. [137-6], at 1-2.) Because the undisputed facts clearly show that Cenlar was a subservicer[8] of plaintiff's mortgage

---

[8] Cenlar also acted as Citi's "agent" in its capacity as subservicer of the mortgage loan. See Phillips v. Ocwen Loan Servicing, LLC, 92 F. Supp. 3d 1255,

17

loan with Citi during the Operative Call Period, Cenlar is a third-party beneficiary to the Settlement Agreement per the clear intentions of the contracting parties, i.e., plaintiff and Citi.  Therefore, the undersigned **REPORTS** that Georgia law permits Cenlar to enforce the relevant terms of the Settlement Agreement.

Moreover, the terms of the release are very broad.  Under the contract, plaintiff agreed to "release[] and forever discharge[]" Citi and its "agents" and "sub-servicers" from "any and all claims, demands, damages, actions, causes of action, [and] suits" which "were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Loan." (Def.'s Mem. Ex. [137-6], at 2.)  Even viewed in the light most favorable to plaintiff as the non-movant, the undisputed material facts show that all of the communications between Cenlar and plaintiff during the Operative Call Period (including the telephone calls underlying his TCPA claim) were made by Cenlar in its capacity as subservicer of plaintiff's the mortgage loan with Citi.  Thus, the undersigned **REPORTS** that plaintiff's

---

1263 (N.D. Ga. 2015) (explaining that, "as Plaintiff's loan servicer, OLS was a disclosed agent of the holder of the Note and Security Deed").  Regardless, the Settlement Agreement clearly states the intent of plaintiff and Citi to release third parties acting on Citi's behalf to service the mortgage loan from any claims directly or indirectly related to the loan.

18

TCPA claim against Cenlar clearly fits within the plain terms of the Settlement Agreement's release.

In sum, Cenlar is a third-party beneficiary to the Settlement Agreement and, under that contract, plaintiff released his instant TCPA claim against Cenlar as subservicer of his mortgage loan with Citi. Accordingly, the undersigned **RECOMMENDS** that defendant's Motion for Summary Judgment be **GRANTED** and plaintiff's TCPA claim be **DISMISSED WITH PREJUDICE**.

III.   **CONCLUSION**

For the reasons set forth above, the undersigned **DENIES** Plaintiff's Motion to Strike Exhibit A [142].

Furthermore, the undersigned **RECOMMENDS** that defendant's second Motion for Summary Judgment [137] be **GRANTED** as to plaintiff's only remaining claim and that this case be **DIMSISSED WITH PREJUDICE**.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 24th day of August, 2023.

_/s/ Walter E. Johnson_
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE