IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RICKY R. FRANKLIN, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> CENLAR FSB d/b/a CENTRAL LOAN § <br> ADMINISTRATION AND § <br> REPORTING (CENLAR), § <br> § <br> Defendants. § § § | Civil Action File No.: <br> 1:20-CV-01410-VMC |

**CENLAR FSB'S RESPONSE TO
PLAINTIFF'S OBJECTION TO THE MAGISTRATE'S FINAL
REPORT AND RECOMMENDATION**

The Defendant, Cenlar FSB ("Cenlar"), by and through the undersigned counsel, hereby files its Response to Plaintiff, Ricky Franklin's Objection to the Magistrate's Final Report and Recommendation (Doc. 150).

### I.   INTRODUCTION

The Magistrate has recommended to the Court that Plaintiff's Motion to Strike be denied and Cenlar's Motion for Summary Judgment be granted and this case be dismissed with prejudice. (Doc. 148). Plaintiff objects to the Report and Recommendation issued by Magistrate Judge Johnson for three (3) reasons: (1) because Cenlar is not a party to the Settlement Agreement with CitiMortgage;

91266496.1

(2) because the case against Cenlar represents a different set of calls than the case against CitiMortgage; and (3) because "the [Report and Recommendation] disregards all facts [] presented by Plaintiff and is prejudicial to Plaintiff". (Doc. 150 at 2.) As shown below, Plaintiff's objections are without merit and should be overruled by the Court. The Magistrate's Final Report and Recommendation (Doc. 148) should be adopted in its entirety.

## II. THE COURT SHOULD ADOPT THE MAGISTRATE'S RECOMMENDATION AS TO THE MOTION FOR SUMMARY JUDGMENT.

### A. Cenlar has Standing to Enforce the Settlement Agreement.

Plaintiff argues that because Cenlar is not a party to the Settlement Agreement, it lacks standing to enforce the Settlement Agreement. (Doc. 150 at 3-4). As a general matter, "settlement agreements are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits." *Schafer Props. v. Tara State Bank*, 220 Ga.App. 378, 469 S.E.2d 743, 746 (1996). And "[a] release or settlement agreement is a contract subject to construction by the court. It is governed by state law applicable to contracts in general." *UniFund Fin. Corp. v. Donaghue*, 288 Ga.App. 81, 653 S.E.2d 513, 515 (2007).

Plaintiff fails to address or distinguish Georgia law cited by Cenlar and the Magistrate, providing that a third-party beneficiary has standing to enforce the

2

provisions of a contract where it clearly appears from the face of the contract that it was intended for the third party's benefit. O.C.G.A. § 9–2–20(b); *Backus v. Chilivis*, 224 S.E.2d 370, 372 (Ga. 1976).  Further, it is not necessary for the third-party beneficiary to be specifically named in the contract where the contracting parties' intention to benefit the third party is shown on the face of the contract.  *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 716 S.E.2d 713, 717 (Ga. Ct. App. 2011).

Here, the Settlement Agreement provided that Plaintiff's release of claims applied to CitiMortgage's "agents" and "sub-servicers", "whether named or unnamed", as "Releasees" under the Agreement. (Def.'s Mem. Ex. [137-6], at 1-2). Going further, the Agreement specifically provided that the Releasees "shall be deemed intended third-party beneficiaries of this Agreement". (*Id.*).  Finally, Plaintiff affirmed that "[i]t is in the intention and effect of this release to discharge all claims that the Releasors have or may have against Releasees up until and including the Effective Date." (*Id.*).

The undisputed facts show that Cenlar was CitiMortgage's "agent" and "subservicer" during the period of time in which Cenlar allegedly made calls to Plaintiff, all of which pre-date the Effective Date of the Agreement. (DSMF, ¶¶6-12).  Thus, on the face of the Settlement Agreement, it is beyond reasonable dispute that Cenlar as both "agent" and "subservicer" of CitiMortgage is an intended third-

party beneficiary with standing to enforce the Settlement Agreement pursuant to Georgia law.

### B. The Settlement Agreement Encompassed All of Plaintiff's Claims Against Cenlar.

Plaintiff argues that the Settlement Agreement with CitiMortgage "represents a period of time from February 2018 until March 2019" and this action "represents a period of time from October 2019 to April 2020" (Doc. 150 at 2). However, the Effective Date of the Settlement Agreement signed by Plaintiff is May 10, 2022. (Def.'s Mem. Ex. [137-6] at 4).  In executing the Settlement Agreement, Plaintiff agreed to "release[] and forever discharge[]" Citi and its "agents" and "sub-servicers" from "any and all claims, demands, damages, actions, causes of action, [and] suits" which "were or could have been raised in, arise out of, relate to, or in any way, directly or indirectly, involve the Loan."  (DSMF, ¶ 15.)  And, Plaintiff confirmed that it was "the intention and effect of this release to discharge all claims that the Releasors have or may have against Releasees up until and including the Effective Date." (DSMF, ¶ 15.)  All of the alleged calls made by Cenlar to Plaintiff pre-date the Effective Date of the Settlement Agreement. Therefore, all of the Plaintiff's claims against Cenlar were released and discharged on May 10, 2022.

### C. The Undisputed Facts Show that Cenlar was Subservicer for CitiMortgage.

Plaintiff claims that the Report and Recommendation "makes assumptions" in favor of Cenlar with respect to Cenlar's status as sub-servicer for CitiMortgage. (Doc. 150 at 6). However, Cenlar provided sworn testimony and documentary evidence, including the Subservicing Agreement and loan specific records, to establish its position as subservicer of Plaintiff's loan from April 1, 2019 through May 3, 2020 – when it made the telephone calls upon which Plaintiff predicates this entire litigation (Subservicing Decl., Doc. 137-3). The Subservicing Agreement defines Cenlar as "Subservicer" and CitiMortgage, Inc. as "Owner/Servicer", and provides in part that "Subservicer hereby agrees to subservice the Mortgage Loans on behalf of Owner/Servicer and its Investors pursuant and subject to the terms of this Agreement" (Doc. 137-3 at 6-12). Consistent with the Subservicing Agreement, CitiMortgage and Cenlar mailed a letter to Plaintiff on or about March 15, 2019, which stated in pertinent part:

> We are proud of the service we provide to mortgage customers. To continue this tradition, we have entered into an agreement with Cenlar FSB d/b/a Central Loan Administration & Reporting ("Cenlar FSB") where CitiMortgage will utilize Cenlar FSB to provide various servicing functions.

(Doc. 137-3 at 15-23.)

Plaintiff did not present any evidence to refute Cenlar and CitiMortgage's business records to show Cenlar's status as subservicer for CitiMortgage.

5

91266496.1

### III. THE COURT SHOULD ADOPT THE MAGISTRATE'S RECOMMENDATION DENYING THE MOTION TO STRIKE.

Plaintiff argues that Cenlar committed discovery violations by failing to produce the Subservicing Agreement with CitiMortgage in response to Defendant's Request for Production of Documents. (Doc. 150 at 7). As a result, Plaintiff asserts that the Court should not adopt the Magistrate's Recommendation. (Doc. 150 at 8).

Plaintiff misdescribes his discovery requests and Cenlar's responses to those requests. Plaintiff's requests for discovery did not seek any of the documents or information upon which Cenlar seeks summary judgment. In reality, Plaintiff's Request for Production No. 5 seeks documents between Cenlar and anyone hired by Cenlar to make calls to Plaintiff.[1]

> **5.    PROVIDE:** All agreements, contracts, correspondence, communications, or emails with any Third Party to send, collect, aggregate, pool together any calls sent on your behalf to consumers as well as Plaintiffs cellphone as alleged in the complaint.

(*Id.*).

Cenlar objected and responded "None exist". (Doc. 143-3 at 7). The Subservicing Agreement between CitiMortgage and Cenlar is not responsive to this request. Accordingly, there are no grounds upon which to strike Cenlar's Subservicing Agreement pursuant to Fed. R. Civ. P. 37(c).

---

[1] Plaintiff defined "You" as Cenlar and "Third Party" as a "business or legal entity not owned or controlled by Cenlar … engaged by Cenlar to call on its behalf". (Doc. 143-1 at 3-4.)

6

## IV. CONCLUSION

Plaintiff executed a Settlement Agreement which included a release of his claims against Cenlar. His arguments against entry of Summary Judgment in favor of Cenlar are factually and legally misguided. The Magistrate's Final Report and Recommendation (Doc. 148) should be adopted in its entirety.

WHEREFORE, Defendant Cenlar FSB respectfully requests this Honorable Court OVERRULE Plaintiff's Objection to the Magistrate's Final Report and Recommendation for the reasons set forth above.

Dated: September 18, 2023.

**POLSINELLI PC**

*/s/ Brendan Herbert*
Brendan I. Herbert
Florida Bar No. 76925
315 S. Biscayne Blvd, Suite 400
Miami, Florida 33131
Phone: (305) 921-1820
*bherbert@polsinelli.com*
(Special Appearance)

-and-

Gwendolyn J. Godfrey
Georgia Bar No. 153004
*ggodfrey@polsinelli.com*
One Atlantic Center, #1100
1201 W. Peachtree St., NW
Atlanta, Georgia 30309
Phone: (404) 253-6000
*Attorneys for Defendant*

91266496.1

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rules 5.1B and 5.1C, using 14-point Times New Roman font.

/s/ Brendan Herbert
Brendan I. Herbert
Florida Bar No. 76925

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of September, 2023, I electronically filed the foregoing **DEFENDANT CENLAR FSB'S RESPONSE TO PLAINTIFF'S OBJECTION TO THE MAGISTRATE'S FINAL REPORT AND RECOMMENDATION** with the Clerk of Court using the CM/ECF system. I further certify that I mailed the foregoing document by certified U.S. mail, return receipt requested, and first-class mail to the following:

Ricky R. Franklin
708 Brambling Way
Stockbridge, GA 30281

/s/ Brendan Herbert
Brendan I. Herbert
Florida Bar No. 76925

*One of the Attorneys for Cenlar FSB*

91266496.1